# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **NXT HEALTHCARE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Docket No.:** _____ |
| | ) | |
| **v.** | ) | |
| | ) | |
| **OCI LIMITED, and OLIVER** | ) | |
| **PHILIP CHAPMAN, individually** | ) | |
| **and in his capacity as CEO,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT

COMES NOW, NXT Healthcare, Inc., by and through its undersigned counsel, bring this Verified Complaint against OCI Limited and Oliver Philip Chapman, alleges, upon personal knowledge as to its own actions, and upon information and belief as to all other matters, complain and allege as follows:

## PARTIES

1.      Plaintiff NXT Healthcare, Inc., (hereinafter referred to as "**NXT**" or "**Plaintiff**"), is a corporation organized and existing under the laws of the State of Georgia with a place of business at 1785 West Oak Parkway, Suite 6, Marietta, Cobb County, Georgia, 30062.

2.     Defendant OCI Limited (hereinafter referred to as "**OCI**" or "**Defendant OCI**") is a corporation of the United Kingdom and having a physical address and principal place of business located at 33 Cannon Street, London, EC4M 5SB, United Kingdom and may be service with process by serving its registered agent's office located at Bank Chambers, 93 Lapwing Lane, Manchester, England, M20 6UR.

3.     Defendant Oliver Philip Chapman (hereinafter referred to as "**Chapman**" or "**Defendant Chapman**") is an individual and citizen of the United Kingdom and may be served with process at his place of business located at 33 Cannon Street, London, EC4M 5SB, United Kingdom or at Bank Chambers, 93 Lapwing Lane, Manchester, England, M20 6UR.

## JURISDICTION

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), that this is a civil action between citizens of Georgia and citizens of the United Kingdom, and the amount in controversy exceeds $75,000, exclusive of interest and costs and this court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

5.     This Court has specific personal jurisdiction over Defendant OCI and Defendant Chapman because Defendants have purposefully availed themselves of

contacts in the State of Georgia and there is a sufficient nexus between such contacts and this lawsuit, in that Defendant OCI and Defendant Chapman agreed to deliver goods to Plaintiff in the State of Georgia and through such transactions have committed wrongful and tortious actions as described herein.

## VENUE

6.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

7.     NXT is engaged in the business of the procurement and sale of medical, dental, and hospital equipment and supplies.

8.     Defendant OCI is a wholesaler and supply chain procurement company of manufacturing, consumables, healthcare, agricultural and industrial sectors.

9.     Defendant Chapman is the CEO of OCI Limited.

10.     On or about September 3, 2020, NXT, OCI, and Leonie Hill Capital (hereinafter "LHC") entered into a Sales and Purchase Agreement (the "Agreement").

11.     Pursuant to the Agreement, NXT agreed to purchase 46,000 units of Nitrile exam gloves in exchange for a purchase price of $483,000.00. A true and

correct copy of the Sales and Purchase Agreement is attached hereto and incorporated herein by this reference as **Exhibit "A"**.

12.  On September 4, 2020, NXT wired $483,000.00 to Defendant OCI.

13.  The Nitrile gloves were to be delivered within two weeks and no later than thirty (30) days after NXT wired the funds to Defendant OCI.

14.  In addition to the September 4, 2020 purchase, NXT bought out a co-purchasers portion of the Nitrile gloves in the amount of $24,965.00, who had also agreed to purchase Nitrile gloves from OCI, bringing NXT's total deposit for the Nitrile gloves to $507,965.00.

15.  Despite satisfying all conditions precedent to receive the Nitrile gloves, Defendant OCI failed to deliver the Nitrile gloves.

16.  On or about October 27, 2020, Defendant Chapman informed NXT that the first lot of Nitrile gloves were due to be shipped Saturday, October 31, 2020, and the corresponding shipping documents would be sent to NXT.

17.  Defendant OCI and Defendant Chapman failed to provide the shipping documents to NXT.

18.  On or about October 28, 2020, NXT repeated its requests for the corresponding shipping documents to be sent but OCI and Chapman failed to provide them to NXT.

19.     On or about October 30, 2020, NXT contacted Defendant Chapman to inform him that NXT would be looking to pursue its legal remedies for principal and damages due to the failure to provide proof the Nitrile gloves were purchased and ready to ship.

20.     On or about October 31, 2020, Defendant Chapman responded by threatening to cancel the flight "since [NXT's] cargo is starting to ship" and that the "1st shipment will arrive during next week."

21.     On or about October 31, 2020, NXT requested Defendant Chapman proof that Defendants had the Nitrile gloves and the required documents for the shipment to clear customs.

22.     On or about October 31, 2020, Defendant Chapman responded by stating "[t]here is no need to prove anything like. That on the plane which is leaving for delivery during next week."

23.     On or about October 31, 2020, NXT requested confirmation that the Nitrile gloves were being shipped that day as promised but were told by Defendant Chapman that the goods would now be delivered next week.

24.     On or about November 2, 2020, NXT requested an update on the shipment of the Nitril gloves.

25.    On or about November 3, 2020, Defendant Chapman responded to NXT's November 2, 2020 request by stating that "everything is in place" and promised to provide the bill of lading invoices.

26.    On or about November 5, 2020, Defendant Chapman informed NXT that the freight for shipping had been paid and despite NXT's additional requests for the necessary customs documentation, Defendant Chapman stated that the documents would not be provided until the Nitrile gloves were shipped.

27.    On or about November 6, 2020, NXT requested to know the location of the Nitrile gloves and asked if Defendants were in possession of the gloves.

28.    On or about November 6, 2020, Defendant Chapman informed NXT that Defendants had the gloves before informing NXT that the gloves had not shipped and were actually in Long Thanh Industrial Zone, Tam An Ward, Long Thanh District, Dong Nai Province, Vietnam.

29.    NXT continued to make repeated requests for the delivery of the Nitril gloves, but Defendants failed to deliver the Nitrile gloves.

30.    NXT has made repeated follow ups to Defendants concerning the Nitrile gloves, but Defendants have failed to respond.

31.    Defendants made repeated written promises that the Nitrile gloves would be delivered or that NXT would be refunded in full but as of the date of this

Complaint, Defendants have failed to refund NXT's down payment or deliver the Nitrile Gloves.

32.    On April 19, 2021, NXT sent a formal demand to OCI via certified mail and e-mail placing OCI on notice of NXT's legal claims against OCI, proposing a resolution short of litigation. A true and accurate copy of the April 19, 2021 Demand Letter is attached hereto as **Exhibit "B"**.

33.    Defendant OCI failed to respond to NXT's formal demand and notice of intent to rescind the Agreement for fraud.

## CAUSES OF ACTION

### COUNT I: RESCISSION OF CONTRACT
### PER UNIFORM COMMERCIAL CODE
### (AGAINST OCI)

34.    Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 32 of this Complaint as if set forth fully herein.

35.    By reasons of the foregoing conduct, Defendant fraudulently induced Plaintiff to enter into the Agreement.

36.    Defendant OCI and Defendant Chapman, during negotiations, and through the execution of the Agreement, made numerous material misrepresentations to NXT that were false and known by Defendants to be false, including Defendants' ability to secure and timely deliver the Nitrile gloves.

37.     Upon information and belief, Defendants knew at the time the Agreement was executed Defendants did not have the ability to acquire and deliver the goods at the specified date.

38.     Plaintiff entered into the Agreement in reliance of the false representations made by Defendants in reliance on the false representations made by Defendants and had Plaintiff known the representations were false, Plaintiff would not have entered into the Agreement.

39.     In entering into the Agreement, Plaintiff was not aware of the falsity of the representations made by Defendants, reasonably believed the representations to be true, and could not have discovered their falsity by the exercise of reasonable diligence.

40.     Plaintiff offered to terminate the contract and return Defendant OCI to the status quo.

41.     Plaintiff formally submitted a request demanding that Plaintiff be refunded its deposit and return the parties to the status quo pursuant to O.C.G.A. § 13-4-60 and O.C.G.A. § 11-2-721.

42.     Defendant OCI and Defendant Chapman refused to refund the deposit amount it had received from Plaintiff.

43.     Plaintiff notified OCI that Plaintiff would seek to have the Agreement judicially rescinded.

44.     The invalidity of the contract does not appear on the face of the Agreement or from the face of any other instrument necessary to the use of the Agreement in evidence.

45.     Plaintiff has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for recission would be.

46.     Recission of the Agreement would be fair and equitable and would not be unduly harsh on Defendant OCI.

47.     Plaintiff requests a judgment that the Agreement between Plaintiff and Defendant OCI be canceled, that the consideration paid by Plaintiff to Defendant OCI for the Agreement (Exhibit "A") be returned to Plaintiff, for the costs of this suit, attorneys fees, and interest.

## COUNT II: COMMON LAW RESCISSION OF CONTRACT
### (AGAINST OCI)

48.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 47 of this Complaint as if set forth fully herein.

49.     This Count is in the alternative the alternative to the Counts that claim an action in law, and in the alternative, it is alleged that baring the success in the

other Counts of this Complaint, Plaintiff has no adequate remedy at law, and therefore requires the relief in equity claimed in this Count.

50.     Recission of the Agreement, if granted, will restore the parties to their original positions, and any possible difference was caused by the actions of Defendant OCI and Defendant Chapman.

51.     Defendant OCI was able to obtain the Agreement on the basis of its intentional false and material statements and representations that Plaintiff reasonably relied upon, and the agreement has been breached by Defendant OCI.

52.     Plaintiff requested that Defendant OCI restore to them the consideration advanced by Plaintiff in the sum of $507,965.00, which represents the full amount of the deposit.

53.     Defendant OCI has refused, and does now continue to refuse, to return the deposit monies, and fails to recognize that said contract has been rescinded.

54.     Plaintiff will suffer irreparable and substantial harm if the consideration furnished by Plaintiff, in the sum of $507,965.00, with interest accrued, is not returned to Plaintiff at this time.

## COUNT III: FRAUD IN THE INDUCEMENT
### (AGAINST OCI)

55.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 54 of this Complaint as if set forth fully herein.

56.     Defendant OCI repeatedly represented to Plaintiff that the Nitrile gloves were available and would be timely delivered upon Plaintiff's payment of the deposit.

57.     Defendant OCI knew or should have known that the Nitrile gloves were actually located in Vietnam and not readily available and could not be timely delivered and therefore false when made.

58.     Defendant OCI false representations and material omissions were knowingly made and intentionally made with the intention to induce Plaintiff's entry into and performance under the Agreement.

59.     Plaintiff justifiably relied on Defendant OCI'Ss false representations and material omissions in entering into the Agreement.

60.     Defendant OCI false representations and material omissions were calculated by Defendant OCI and Defendant Chapman to deceive Plaintiff.

61.     Plaintiff was proximately and actually injured by the misconduct of Defendant OCI and Defendant Chapman, which reasonably relied upon their false representations and material omissions in sending the deposit for the Nitrile gloves, which Plaintiff would not have sent otherwise.

62.    As a direct and proximate result of Defendant OCI and Defendant Chapman's false representations and material omissions, Plaintiff has been damages in amount to be proven at trial, but no less than $507,965.00.

## COUNT IV: FRAUDULENT MISREPRESENTATION
## (AGAINST OCI)

63.    Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 62 of this Complaint as if set forth fully herein.

64.    On or about November 27, 2020, Defendant OCI's counsel informed Plaintiff that OCI would refund any amounts it received for the purchase of the Nitrile gloves.

65.    On or about December 4, 2020, OCI represented to Plaintiff that OCI would promptly return funds to Plaintiff upon demand, which was a separate and distinct promise outside the terms of the original Agreement.

66.    Relying on this representation, on December 22, 2020, Plaintiff tendered a prompt demand for a refund of its deposit.

67.    Despite Plaintiff's request for a refund of its deposit amount from OCI, Plaintiff's deposit has not been refunded by OCI.

68.    Defendant OCI intentionally made certain representations to Plaintiff, specifically the prompt return of Plaintiff's deposit upon demand.

69.    The intentional misrepresentations were made knowingly by OCI, through its counsel, in order to deceive Plaintiff as to an existing fact and with the intent that Plaintiff rely and act upon said misrepresentations without the material information thus concealed.

70.    Plaintiff, without any knowledge or indication that the misrepresentations were indeed false and without indication from OCI that material information was being concealed from it, agreed to a refund of its deposit but to this date the deposit has not been returned.

71.    Plaintiff has been damaged by OCI's fraudulent misrepresentations and concealments in an amount to be determined, but no less than $507,965.00.

## <u>COUNT V: FRAUD AND DECEIT</u><br>(AGAINST OCI)

72.    Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 72 of this Complaint as if set forth fully herein.

73.    Defendant OCI intentionally made material false representations to Plaintiff to induce Plaintiff to enter the Agreement and send its deposit for the purchase of the Nitrile gloves.

74.    To induce Plaintiff into entering the Agreement and send the deposit, Defendant OCI and Defendant Chapman falsely stated to Plaintiff that the Nitrile gloves were readily available and could be delivered in a timely manner, within two

weeks to a month after the deposit was sent when in reality the product was located in Vietnam and not readily available and could not be delivered in a timely manner, two weeks to a month after the deposit was sent.

75.     The Nitrile gloves were not acquired and delivered to Plaintiff as represented by Defendant OCI and Defendant Chapman.

76.     Defendant OCI and Defendant Chapman have not acquired and delivered, and never intended to acquire and deliver the Nitrile gloves to Plaintiff as stated at the time of entering into the Agreement.

77.     At the time of making such representations and promises to Plaintiff, Defendant OCI and Defendant Chapman knew that such representations and promises were false.

78.     Defendant OCI and Defendant Chapman made such false representations and promises with specific intent of deceiving Plaintiff and fraudulently inducing Plaintiff to enter into the Agreement and wire the deposit.

79.     The false representation and promises deceived and induced Plaintiff to enter into the Agreement and wire the deposit.

80.     As a direct and proximate result of Defendant OCI and Defendant Chapman's fraud and deceit, Plaintiff has been damaged in and amount to be determined at trial, but not less than $507,965.00.

### COUNT VI: FRAUD
### (AGAINST OLIVER CHAPMAN)

81.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 80 of this Complaint as if set forth fully herein.

82.     In order to induce Plaintiff to place an order and make a deposit on the Nitrile gloves, Defendant Chapman made numerous knowingly false representations and intentionally omitted numerous material facts to Plaintiff, including but not limited to:

(a) Representing to Plaintiff the first lot of Nitrile gloves were due to be shipped Saturday, October 31, 2020, and the corresponding shipping documents would be sent to Plaintiff;

(b) Representing to Plaintiff that NXT's "cargo is starting to ship" and that the "1st shipment will arrive during next week";

(c) Representing to Plaintiff that the Nitrile gloves were "on the plane which is leaving for delivery during next week";

(d) Representing to Plaintiff that "everything is in place" and promising to provide the bill of lading invoices;

(e) Representing that the freight for shipping had been paid; and

(f) Representing that OCI had possession of the Nitrile gloves;

83.     The intentional omissions of material fact and/or affirmative misrepresentations made by Defendant Chapman were false when made and Defendant Chapman knew these representations to be false when made with the intention that Plaintiff rely upon them in executing the Agreement to purchase Nitrile gloves and paying a substantial deposit for the gloves.

84.     Defendant Chapman intended for Plaintiff to detrimentally rely on his false statements promising to deliver the Nitrile gloves.

85.     Defendant Chapman's statements constitute material misrepresentations and fraud.

86.     Plaintiff justifiable relied upon Defendant Chapman's false statements, omissions, material misrepresentations and fraud to Plaintiff's detriment.

87.     Defendant Chapman's false statements, omissions, material misrepresentations were calculated to, and did, fraudulently induce Plaintiff to order the Nitrile gloves and place the deposit which allowed Oliver Chapman to benefit from the acquisition of Plaintiff's deposit.

88.     Defendant Chapman's false statements, omissions, material misrepresentations and fraud could not be discovered by Plaintiff upon the exercise of common prudence and diligence.

89.     As a direct and proximate result of Defendant Chapman's false statements, omissions, material misrepresentations, and fraud, Plaintiff has been damaged in an amount not less than $507,965.00, with the exact amount to be proven at trial.

90.     Due to Defendant Chapman's false statements, omissions, material misrepresentations and fraud, Plaintiff is entitled to judgment against Defendant Chapman in an amount not less than $507,965.00, with the exact amount to be determined at trial.

## COUNT VII: CONSPIRACY TO COMMIT FRAUD
### (AGAINST OCI AND OLIVER CHAPMAN)

91.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 90 of this Complaint as if set forth fully herein.

92.     Defendant OCI and Defendant Chapman engaged in a conspiracy to defraud Plaintiff.

93.     Defendant OCI and Defendant Chapman falsely represented to Plaintiff that Defendant OCI was capable of providing Plaintiff with Nitrile gloves, and Defendant Chapman represented to Plaintiff that the Nitrile gloves could be quickly acquired and shipped upon receiving Plaintiff's deposit.

94.     Defendant OCI and Defendant Chapman knew that Defendants did not have the ability to acquire and ship the merchandise as stated.

95.     Plaintiff justifiably relied upon the representations of Defendant OCI and Defendant Chapman.

96.     Due to Plaintiff's justifiable reliance, Plaintiff sustained damages and is entitled to recover all losses sustained as a result of the fraud perpetrated by Defendant OCI and Defendant Chapman.

## COUNT VIII: UNJUST ENRICHMENT
### (AGAINST OCI)

97.     Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 96 of this Complaint as if set forth fully herein.

98.     Plaintiff conferred a benefit to OCI by providing it with the deposit for the Nitrile gloves in the amount of $507,965.00.

99.     Defendant OCI has knowledge of the benefit conferred by Plaintiff.

100.    Defendant OCI has accepted and/or retained the benefit conferred by Plaintiff.

101.    The circumstances are such that it would be unjust and inequitable for Defendant OCI to retain Plaintiff's deposit for undelivered Nitrile gloves.

102.    Plaintiff made demand to Defendant OCI for the return of the deposit.

103.    Defendant OCI has been unjustly enriched by the retention of the deposit paid by Plaintiff for the Nitrile gloves.

104.   Plaintiff has suffered damages as a direct and proximate result of this unjust enrichment and is therefore entitled to judgment against Defendant OCI in an amount to be determined at trial, but no less than $507,965.00.

## COUNT IX: PUNITIVE DAMAGES

105.   Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 104 of this Complaint as if set forth fully herein.

106.   Defendant OCI and Defendant Chapman's conduct as alleged herein constitutes willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly, NXT is entitled to recover punitive damages from Defendant OCI and Defendant Chapman in an amount to be proven at trial.

## COUNT X: ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-6-11

107.   Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 106 of this Complaint as if set forth fully herein.

108.   Defendant OCI and Defendant Chapman's conduct constitutes bad faith and stubborn litigious behavior, and despite NXT's reasonable notice and demand for the refund of its deposit by Defendant OCI and Defendant Chapman has caused NXT unnecessary trouble and expense as defined and contemplated by O.C.G.A. § 13-6-11. Accordingly, NXT is entitled to judgment against Defendant OCI and

Defendant Chapman for its costs and reasonable attorney's fees actually incurred in connection with this action

**NOW WHEREFORE**, NXT Healthcare, Inc., prays for the following relief:

A.  That service and process issue as provided by law;

B.  Judgment against Defendants and an award of monetary damages in an amount to be determined at trial for Plaintiff's claims for recission of contract, recission of contract at common law, fraud in the inducement, fraudulent misrepresentation, fraud and deceit, fraud, conspiracy to commit fraud, unjust enrichment, and punitive damages;

C.  An award of reasonable attorneys' fees and cost of litigation on all Counts in this Complaint pursuant to O.C.G.A. §13-6-11; and

D.  All other and further relief as the Court deems just and proper.

**This** 17th day of November, 2021.

[*Signatures on following page*]

Respectfully submitted,

**WEENER NATHAN PHILLIPS LLP**

/s/ Cory J. Wright
Devin B. Phillips
Georgia Bar No. 189782
Cory J. Wright
Georgia Bar No.: 311298
*Attorneys for Plaintiff*

5887 Glenridge Drive, NE, Suite 275
Atlanta, GA  30328
Tel. (770) 392-9004
Fax (770)522-9004
Emails: dphillips@wnpllp.com
          cwright@wnpllp.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| NXT HEALTHCARE, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | Docket No.: _____ |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| OCI LIMITED, and OLIVER | ) | **JURY TRIAL DEMANDED** |
| CHAPMAN, individually and in his | ) | |
| capacity as CEO | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer and receive oaths, NXT HEALTHCARE, INC., by and through MIKE OLIVER, its President, who, after being duly sworn, state that all of the allegations in the foregoing *Verified Complaint*, are true and correct to the best of my knowledge, information and belief.

NXT HEALTHCARE INC.

By: _____
Mike Oliver, its President

Sworn to and subscribed before me this
___th day of October, 2021.

_____
Notary Public

My commission expires: 8-19-22

[Notary Seal]

SHANNON D. ZIMMERMAN
MY COMMISSION EXPIRES
NOTARY PUBLIC
08-19-2022
FULTON COUNTY, GEORGIA

# EXHIBIT "A"





# SALES AND PURCHASE AGREEMENT

September 3, 2020

Made between the following parties:

## OCI Limited

33 Cannon Street

London

EC4M 5SB

Tel: +44 (0) 203 137 7326

Email: hello@oci-group.co.uk

hereafter known as SELLER

## Leonie Hill Capital

2 Havelock Road, #05-22

Havelock II

Singapore 059763

hereafter known as SELLER

## NXT Healthcare, Inc.

1785 West Oak Pkwy

Suite 6

Marietta, GA 30062

Tel: +1 (833) 874-5277

Email: mike.oliver@nxthealthcare.com

hereafter known as BUYER

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

1

  

## SALES CONTRACT

"LEONIE HILL CAPITAL", and "OCI LIMITED", hereinafter referred to as the SELLER on the one part and "NXT Healthcare, Inc" hereinafter referred to us as the BUYER on the other part, have concluded the present contract as follows:

**DATE OF CONTRACT: September 3, 2020**

**SELLER:**          **Leonie Hill Capital**
                     **2 Havelock Road. #05-22**
                     **Havelock II**
                     **Singapore 059763**

**SELLER:**          **OCI Limited**
                     **33 Cannon Street**
                     **London**
                     **EC4M 5SB**

**BUYER:**           **NXT Healthcare, Inc.**
                     **1785 West Oak Pkwy**
                     **Suite 6**
                     **Marietta, GA 30062**

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

2

 

**SUBJECT OF THE CONTRACT:**

The SELLER agrees to sell, and the BUYER agrees to buy the following material:

**SUBJECT OF THE CONTRACT:**

The SELLER agrees to sell, and the BUYER agrees to buy the following material:

**\*\*\*Final contract / invoice will reflect all air, all sea, or combination of both for Forty-six thousand boxes – 100 count gloves \*\*\***

**By Air**

| | |
|---|---|
| MATERIAL: | Nitrile Exam Gloves – 4 mil (10mm) blue exam gloves, FDA 510K certified, ASTM D6978 |
| QUANTITY: | 46,000 Boxes (100 Gloves in each box) |
| **PRICE:** | USD $10.50 |
| ORIGIN: | Asia |
| LOAD PORT: | Ports of Thailand, Malaysia or Vietnam (Any) |
| PACKING: | In Cartons of 10 Boxes each |
| DELIVERY/SHIPMENT: | LAX or airport of choice, USA |
| INCOTERM: | CIF |
| VALIDITY: | Shipping of the entire quantity to be completed within 14 days per schedule attached. |

The BUYER agrees to accept the goods and pay for them according to the terms further set out below:

PAYMENT TERMS: Buyer will wire for the 46,000 Boxes directly to OCI in the amount of **$483,000**, issued from Chase Bank, USA.

SUPPLIER BANK:        Barkley's, United Kingdom

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

3

 

The SELLERS warrant that the material is free from any hazardous, dangerous, radioactive, or explosive materials.

For and on behalf

**Leonie Hill Capital**                      **OCI Limited** 

_____                    _____

## TERMS AND CONDITIONS

### GENERAL

a) The 'BUYER' means NXT Healthcare, Inc. or any of its subsidiaries.
b) The 'SELLER' means Leonie Hill Capital / LHC, OCI Limited or any of its subsidiaries.
c) 'DOCUMENT INSTRUCTIONS' shall mean the documents, which the SELLER provides once the vessel is loaded. The required documents are: Invoice, Packing List, Airway Bill, Certificate of Origin issued by Supplier and Drafts / Promissory note for the value of each invoice.
d) The 'GOODS' means the articles / materials of services with related documents as described in the Sales Order of the SELLER.
e) 'SERVICES' means work and / or services or any of them to be performed by the SELLER for the BUYER pursuant to the Sales Order.
f) The 'CONTRACT' means the contract for the sale of the good and /or provision of the Services made between the SELLER and the BUYER to which these conditions apply.

### APPLICATION

a) These Conditions shall apply to and be incorporated in the Contract and shall be in substation for any oral arrangements made between the BUYER and the SELLER and shall prevail over any inconsistent terms or conditions contained in or referred to in the SELLER's quotation or acceptance of order or correspondence or elsewhere or implied by trade customer or practice or course of dealing and no addition to or variation of or exclusion or attempted exclusion of the Sales Order and / or their conditions or any of them shall be binding upon the BUYER unless in writing and signed by a duly authorized representative of the BUYER.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

4

 

**CONTRACT ACCEPTANCE**

   a)  The acceptance of the Sales Contract is limited to and conditional upon acceptance by the SELLER of these conditions.
   b)  The performance or delivery of Goods by the SELLER pursuant to the Order shall constitute acceptance of the Conditions of Purchase when acceptance has not previous been communicated to the BUYER.


**QUALITY AND DESCRIPTION**

   a)  It is a condition of the Contract that the Goods shall conform with the quality and description and other particulars of the Goods stated in the Sales Order, shall conform to all samples, drawings, descriptions and specifications furnished by the SELLER to the BUYER, shall be of merchantable quality and fit for any intended use expressly or impliedly made known to the SELLER and free from all defects.
   b)  Prior to dispatching the same, the BUYER shall inspect and / or text the Goods in conformity with the specifications in the Sales Contract.
   c)  All the services shall be supplied in full accordance with the terms of the Sales Contract and shall be executed in the proper and skillful manner by properly qualified and experience persons.

   These provisions shall survive any delivery, inspection, acceptance or payment pursuant to the Sales Contract and shall extent to any replacement, repaired, substitute or remedial of Gods, and /or Services provided by the SELLER with the consent of the BUYER.

   d)  The SELLER represents and warrants that the Goods:

   i)  Shall be delivered in full and unencumbered ownership
   ii)  Shall be in accordance with the agreed quantity, dimensions, quality, and description in the Sales Contract
   iii)  Shall, in all respects, be in conformity with possible samples and with the reported specifications
   iv)  Shall be free of all defects, radioactivity, asbestos and all other pollution and dangerous substances and shall be fit for the purpose for which the Goods have been sold; it being understood and consented to by the BUYER that the SELLER is responsible for the detection, safeguarding, storage, return shipment to the SELLER, remediation or disposal of the contaminated goods and shall be for the account of the SELLER.

   e)  In case the Goods do not comply with the Sales agreement, or if the SELLER cannot deliver within the specified time frame, the SELLER will refund the BUYER 100% of the purchase amount within 24 hours of cancellation by the BUYER.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

5





**PACKING**

a) The SELLER confirms that the goods will be shipped by Air.

**PRICES**

a) All prices shall be as stated in the Sales Order.
b) All prices specified are FOB / CIF and does not include any duties or taxes. However, post signing the agreement if any new taxes or duties are applied, these will be additional to the exiting price quoted in the agreement.
c) All prices are fixed, unless stated otherwise in the Sales Agreement. Changes in duties and taxes as well as changes in factory and / or importer's prices and rate of exchange and /or other costs price-raising elements cannot be claimed by the BUYER.

**INSPECTION AND REJECTION**

The BUYER is able to carefully inspect and test the Goods prior to loading to ensure that they comply with the requirements of the Sales Contract and the BUYER shall if so requested by the SELLER give the SELLER reasonable notice of any such tests and the SELLER shall be entitled to be represented there at load port.

**DELIVERY AND TRANSPORT**

a) Time of delivery shall mean the time within which performance must be concluded, as stipulated in the Sales Confirmation. Time is of the essence in the performance of the Sales Order. If delivery dates or the dates for the provision and /or performance of the Services cannot be met, the SELLER shall promptly notify the BUYER of the earliest possible date for delivery or the provision and /or performances of Services.
b) Delivery will be as per Sales contract confirmation made by the SELLER, as per Incoterms, latest version, duties paid.
c) The Goods will remain at the risk of the SELLER until the vessel has completed loading and has arrived the port of destination and the BUYER inspects and accepts the goods.
d) Working hours for loading and discharging vessels, including any demurrage time, will be those specified by the ship owners, and will not be open to any challenge by the BUYER, unless prior agreement is reached with the SELLER.
e) Unless otherwise stated in the Purchase Confirmation, all costs for transportation to the place of final delivery, all costs of customs clearance (at destination) and all costs until end of discharge will be for the account of the BUYER.
f) Unless otherwise state in the Purchase Confirmation, all costs for transportation to the port of loading, all costs of terminal handling at origin and all costs until the vessel is loaded on board (FOB) will be for the account of the SELLER.
g) BUYER will be supported to CIF terms.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

6

 

**PAYMENT**
a) BUYER will issue a Letter of credit for 100% of the contract value, with <u>HBCB</u>. Or provide 100% of the purchase wired to OCI.
b) SELLER provides the goods to the BUYER on credit terms as agreed in this contract unless paying for goods upfront.
c) BUYER undertakes to accept the Drafts / promissory notes for each invoice raised by SELLER and make payment to SELLER / SELLERS BANK on due date if applicable.
d) Invoices must be provided to the BUYER upon the vessel being loaded and must be accompanied with the required documents and certificates as outlined by the BUYER.
e) Promissory note draft acceptance will be made by the BUYER to the SELLER after all the required documents are sent to the Buyer through buyer's bank.

**INFORMATION**
All specification, certificates, technical information, date(s) and other information, (whether written, oral or otherwise) furnished to the BUYER by the SELLER or on its behalf shall remain the property of the SELLER and shall be returned promptly to the SELLER (together will all copies) at the SELLER's request. Such information shall be treated by the BUYER as strictly confidential, shall be kept safely and shall not be used or disclosed by the BUYER except strictly as required in the course of performance of this agreement or any other Sales Agreement for the SELLER.

**INDEMNITY & LIABILITY**
a) The SELLER and BUYER undertakes to perform its responsibilities under the contract, professionally, ethically and in compliance with Laws and regulations of the respective operating countries and will further comply with written guidelines provided by either party to the contract.

b) The BUYER will communicate to the SELLER in writing and may modify from time to time the instructions and guidelines, product specifications and standards that need to be adhered to.

c) The BUYER will make a written complaint of any non-conformity of quality, weight or any other condition causing a concern, within 14 days from the date of taking physical collections of the goods. The SELLER and the BUYER will make all efforts to resolve any such claims or concerns through mutual discussions and negotiations. Failing which should be deal with as per the "DISPUTES" section of this agreement.

d) Neither the SELLER nor the BUYER will be liable to any third party, with whom the other party within this agreement may have a separate contract or agreement.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

7

 

## ARBITRATION AND GOVERNING LAW

All disputes, differences or questions arising of this agreement or as to the rights or obligations of the parties under it or in connection with its construction shall be referred to arbitration by a single arbitrator to be agreed between the parties. If the parties are unable to agree upon the arbitrator within 14 days of a party proposing arbitration to the other party the arbitrator will be appointed at the request of either party by the president for the time being of the laws of the United States of America having due regards to any representations made to him as to the appropriate qualifications of such arbitrator. The arbitration shall take place in California and shall be in accordance with The Federal Arbitration Act or any re-enactment or modification of such Act for the time being in force.

## FORCE MAJEURE

Neither party shall have any liability or be deemed to be in breach of this agreement for any delays or failures in performance of this agreement that result from circumstances beyond the reasonable control of that party. The party affected by such circumstances shall promptly notify the other party in writing when such circumstances cause a delay or failure in performance when they cease to do so. If such circumstances continue for a continuous period or more than 6 months either party may terminate this agreement by written notice to the other party.

## TRADE TERMS

In the Sales Order refers to any international trade term such term shall be interpreted in accordance with INCOTERMS current date of the Sales Order save insofar as such meaning shall be inconsistent with the express provisions of the Conditions of Sales of the Sales Order.

## CANCELLATION

Notwithstanding and without prejudice to any other lawful right of the BUYER, the BUYER shall have the right to terminate the Contract in whole or in part at any time upon giving written notice to the SELLER, whereupon the SELLER shall cease all work on the Order of on the cancelled part thereof as the case may be and the BUYER shall pay the SELLER such portion of the Order price as may be fair and reasonable having regard to the value of the work done and of Goods previously delivered and of Service performed under the Order. The BUYER shall have no other liability to the SELLER by virtue of such termination.

Equivocally and notwithstanding and without prejudice to any other lawful right of the SELLER, the SELLER shall have the right to terminate the Contract in whole or in part at any time upon giving written notice to the BUYER, whereupon the BUYER shall pay the SELLER such portion of the Order price as may be fair and reasonable having regard to the value of the work done and of Goods previously delivered and of Services performed under the Order. The SELLER will cease all work on the Order or on the cancelled part thereof as the case may be and the SELLER shall have no liability to the BUYER by virtue of such termination.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

 

**LICENSE**

If the performance of the Order requires the BUYER to have any permit or license from any government or other authority at home or overseas, the Order shall be conditional upon such permit or license available at the time required.

Equally, if the performance of the Order requires the SELLER to have any permit or license from any government or other authority at home or overseas, the Order shall be conditional upon such permit or license available at the time required.

**PUBLICITY**

The BUYER shall not without the prior express written permission of the SELLER, publicize in any way the name of the SELLER or the destination or description of the Goods supplied or to be supplied under the order.

**JURISDICTION**

United States Law shall govern the validity construction and performance of this agreement. Any dispute arising under or in connection with this agreement shall be subject to the exclusive jurisdiction of the Unites States courts to which the parties to this agreement herby submit.

**RETENTION OF TITLE**

Ownership of the Goods that are subject to this agreement shall not pass to the BUYER until they are fully paid for, but the risk in the goods shall be borne by the BUYER from the date of the delivery by the SELLER or its agents to the destination.

**SUBCONTRACTING**

The SELLER may perform any or all its obligations under this agreement as to delivery through agents or subcontractors provided the SELLER should remain liable for such performances.

**THIRD PARTIES**

This agreement shall not operate to confer any rights on any third party and no person other than the parties to this agreement may enforce any provision to this agreement by virtue of the contracts (Rights of Third Parties) Act 1999.

**DISPUTES AND APPLICABLE LAW**

a) BECAUSE THE USE OF THE SERVICE REQUIRES THE ARBITRATION OF ANY CLAIMS OR DISPUTES EXISTING BETWEEN THE PARTIES, SUBJECT TO THIS SECTION, NEITHER PARTY WILL HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR BEFORE A JUDGE OR JURY OR TO PARTICIPATE IN A

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

9

 

CLASS ACTION OR ANY OTHER COLLECTIVE OR REPRESENTATIVE PROCEEDING. THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. OTHER RIGHTS THAT EITHER PARTY WOULD HAVE IF SUCH PARTY WENT TO COURT, INCLUDING WITHOUT LIMITATION THE RIGHT TO CONDUCT DISCOVERY OR TO APPEAL, MAY BE LIMITED OR UNAVAILABLE IN ARBITRATION.

b) You agree that any dispute arising out of or relating in any way to your use of the Licensed Product. Site or Service requires that such claim be resolved exclusively by confidential, binding arbitration. The arbitration shall be conducted before three neutral arbitrators in Los Angeles, California, U.S.A., in accordance with the rules of the American Arbitration Association ("AAA"), as then in effect. No claims of any other parties may be joined or otherwise combined in the arbitration proceeding. Unless otherwise expressly required by applicable law, each party shall bear its own attorneys' fees without regard to which party is deemed the prevailing party in the arbitration proceeding. The parties shall equally share all AAA charges and fees associated with the arbitration. Subject to these Terms, the arbitrators will have the authority to apportion liability between the parties, but will not have the authority to award any damages or remedies not available under, or in excess of, the express terms of these Terms. The arbitration award will be presented to the parties in writing, and upon the request of either party, will include findings of fact and conclusions of law. The award may be confirmed and enforced in any court of competent jurisdiction. With regards to any action for breach of confidentiality or intellectual property obligations, nothing in this Section shall preclude either party from seeking interim equitable relief in the form of a temporary restraining order or preliminary injunction. Any such request by a party of a court for interim equitable relief shall not be deemed a waiver of the obligation to arbitrate hereunder. YOU HEREBY IRREVOCABLY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION ARISING OUT OF OR RELATING TO THESE TERMS OR THE SERVICE.

c) The award of the arbitrators may be enforced in any court having jurisdiction thereof. Each party hereby consents (i) to the exclusive jurisdiction of the state or federal courts located in Los Angeles, California, for any action (a) to compel arbitration, (b) to enforce any award of the arbitrators, or (c) at any time prior to the qualification and appointment of the arbitrators, for temporary, interim or provisional equitable remedies, and (ii) to service of process in any such action by registered mail or any other means provided by law. Should this Section 13 be deemed invalid or otherwise unenforceable for any reason, it shall be severed and the parties agree that sole and exclusive jurisdiction and venue for any claims will be in the state or federal courts in Los Angeles County, California, and each party hereby irrevocably consents to the exclusive jurisdiction of such courts.

**OTHER TERMS AND CONDITIONS**

a) All parties shall act according to the terms stipulated herein on signing this contract and assume legal responsibility.

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com





b) Any amendments and /or supplements to the present contract shall be valid only if they are made in written form and signed by duly authorized representative of the parties.

c) All correspondence and negotiations concerning the contract that have taken place prior to its signing shall be considered null and void.

d) All duties and taxed on the consignment at loading port, if any shall be on the BUYERS account.

e) Where it would be decided than an agreement has come into force without a Sales Contract having been sent or received, the word Sales Contract hereinafter shall have to be read as 'agreement'.

f) An agreement will only come into force by the signing of the Sales Contract by the SELLER.

**By signing this Agreement, which consists of a total of TWELVE pages, the parties to the Agreement agree to be bound by the terms and conditions so stated therein.**

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

11

 

**FOR and on behalf of <u>OCI LIMITED</u>**

**Name:** Arun Kant

**Signature:** _____

**Position:** Owner

**Date:** 9/3/20

**FOR and on behalf of <u>LEONIE HILL CAPITAL</u>**

**Name:** Arun Kant

**Signature:** _____

**Position:** CEO

**Date:** 9/3/20

**FOR and on behalf of <u>Buyer</u>**

**Name:** Mike Oliver

**Signature:** _____

**Position:** President

**Date:** 09/04/2020

**OCI Limited** | 33 Cannon Street London EC4M 5SB
Tel: +44 (0) 203 137 7326 | Email: hello@oci-group.co.uk

**Leonie Hill Capital** | 2 Havelock Road, #05-22. Havelock II | Singapore
Tel: +65 9777 1859 | info@leoniehillcapital.com

**Addendum**

NXT Healthcare, Inc. agrees to purchase an additional 2,378 boxes at $10.50 for a total of $24,969.00.

# EXHIBIT "B"

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sullivan & Worcester, LLP
Attn: Jay Jenkins, Esq.
1633 Broadway
New York, NY 10019

9590 9402 6403 0303 9717 27

2. Article Number (Transfer from service label)

7020 2450 0001 8957 1726

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Cassidy_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053    Domestic Return Receipt

# WEENER NATHAN PHILLIPS LLP
## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                    dphillips@wnpllp.com

April 19, 2021

*__Via Certified Mail No.__: 7020 2450 0001 8957 1726*
*__Return Receipt Requested__; and*
*__Email: jjenkins@sullivanlaw.com__*

Sullivan & Worcester, LLP
Attn: Jay Jenkins, Esq.
1633 Broadway
New York, NY 10019

**Re:    Notice of Representation of NXT Healthcare, Inc. ("NXT"); Notice of Legal Claims Against OCI Limited ("OCI"); Demand for Full Refund**

Dear Mr. Jenkins:

Be advised the undersigned serves as legal counsel to NXT regarding the above-referenced matter. The purpose of this correspondence is to convey NXT's formal demand for refund of payment, and to place OCI on notice of legal claims against it and provide OCI with the opportunity to avoid legal action against it by resolving the herein referenced matter immediately.

In September 2020, NXT, OCI, and Leonie Hill Capital entered into a Sales and Purchase Agreement (the "Agreement") where OCI agreed to purchase 46,000 units of Nitrile exam gloves in exchange for the purchase price of $483,000.00. On September 4, 2020, NXT wired $483,000.00 to OCI. Despite satisfying all conditions precedent to receive the gloves, NXT's repeated follow up and OCI's repeated, written promises that the gloves will be delivered, as of the date of this letter, NXT has not received its order of the Nitrile exam gloves.

**Based on the foregoing, NXT hereby rescinds its Agreement with OCI and now demands that OCI refund NXT the full amount paid for the unfulfilled order of Nitrile exam gloves for a total of Four Hundred Eighty-Three Thousand and 00/100 ($483,000.00) on or before 5:00 PM Friday Eastern Time April 23, 2021.** I have enclosed my law firm's wiring instructions to facilitate the payment. If OCI wires the full amount stated herein on or before April 23, 2021 at 5:00 PM Eastern Time, my client will waive prejudgment interest and reimbursement of its attorney's fees.

This matter can be quickly and amicable resolved. However, should OCI fail to comply with NXT's above demand, NXT has authorized me to initiate a lawsuit against OCI in the Superior Court of Cobb County Georgia for claims including, but not limited to, rescission of contract, fraud in the inducement, fraudulent misrepresentation, and fraud and deceit. My client

WEENER NATHAN PHILLIPS

Sullivan & Worcester, LLP
Jay Jenkins, Esq.
April 19, 2021
Page 2

intends to seek damages, interest thereon, punitive damages, and reimbursement of its attorney's fees.

I trust the above and enclosed are clear; however, should you wish to discuss this issue with me further please call me.

Best Regards,

**WEENER NATHAN PHILLIPS LLP**

Devin B. Phillips

Enclosure

cc:     Client